**SIGNED this 1st day of February, 2012**

_____
John C. Cook
UNITED STATES BANKRUPTCY JUDGE

_____

IN THE UNITED STATES BANKRUPTCY COURT FOR
THE EASTERN DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| **In re:** | ) | |
| | ) | |
| **Mary Ann Howard** | ) | No. 11-11254 |
| | ) | **Chapter 13** |
| **Debtor** | ) | |

# M E M O R A N D U M

This case is before the court on the Motion for Order Establishing that the Debtor Has Tendered Payoff to First National Bank filed by the debtor on December 22, 2011, and on the Motion to Void/Set Aside [Auction] Sale filed by First National Bank on January 10, 2012. The debtor's motion asks the court to determine the balance owed to the bank after the application of the proceeds of sales of three tracts or parcels of real property to the debt. The bank seeks to set aside the sale of two of those properties, namely commercial properties located in Bradley County, Tennessee, on the ground that there was a misunderstanding between the parties regarding the formulation of the bank's credit bid at the sale. Having considered the record and the evidence

presented at the hearing on the motions, and having considered the arguments of the parties, the court will grant the debtor's motion and deny the bank's motion for the reasons set forth below.

**I.**

On March 4, 2011, the debtor commenced this case by filing a voluntary petition for relief under chapter 13 of the Bankruptcy Code. On August 31, 2011, the court confirmed the debtor's chapter 13 plan, which provides, with respect to the bank: "Commercial property to be auctioned off except for the Beauty Shop and Lot. Excess proceeds to be paid to trustee." The day before the plan was confirmed, the debtor filed a motion for authority to sell three properties free and clear of the bank's interest therein with its liens to attach to the sale proceeds, those properties being a cabin located in Polk County, Tennessee, and the two commercial properties that are the subjects of the bank's motion. The bank and the standing chapter 13 trustee objected to the motion, and a hearing was scheduled for September 22, 2011.

Matthew E. Jenne, a senior vice president of the bank, testified that, in the courthouse hall prior to the hearing on the debtor's motion for authority to sell the properties, the debtor and the auctioneer agreed that the cabin would be sold before the two commercial properties, that the bank could credit bid for the properties, and that, if the bank was the successful bidder on either of the two commercial properties, it would not be required to pay auctioneer fees so that such fees would be payable only with respect to the sale of the cabin. The bank officer also testified that the parties further agreed that "the net proceeds of the sale of the Polk County property, which we did not have encumbered and which was unencumbered, were to be applied to our loan via our auction amount." In other words, in bidding on the Bradley County commercial proper-

ties, the bank was to receive a credit in the amount of the net proceeds from the sale of the cabin.

On September 23, 2011, the court entered an agreed order authorizing the sales free and clear of the bank's security interests. The order provided that the cabin would be sold first, that the bank could bid on the properties being auctioned, and that, if the bank was the successful bidder on either of the two commercial properties, no auctioneer fees would be charged to the bank and all auction fees would be associated with the sale of the cabin only. The order provided that, "[a]fter paying the auctioneer, survey costs and escrowing monies to pay off the Chapter 13 plan (minus the funds due First National Bank), the remainder of all sale proceeds shall be paid to First National Bank to reduce their claim against the Debtor, claim number one." The bank would then retain its lien on a fourth property owned by the debtor (the beauty shop mentioned in the plan) to secure repayment of any remaining indebtedness, and the debtor would have 90 days from the date of the auction to satisfy that debt. The agreed order was drafted by the bank's attorney, and was reviewed by the bank officer, who did not voice any objections to the order or raise any issues with respect thereto. The bank's proof of claim no. 1 asserted a claim in the amount of $149,136.59.

The auctions were conducted on or about September 24, 2011. The cabin was sold to a third party and, in accordance with the agreed order, the bank received the net proceeds in the amount of $19,631.51 in reduction of its claim against the debtor. The bank was the successful bidder for the commercial properties, credit bidding the total sum of $90,000.00. The bank officer testified that the bank computed the amount of its bid with an eye toward reducing the debt to an amount approximately equal to the tax appraisal of the beauty shop, which was about $54,000. Credit bidding $90,000 for the commercial properties would accomplish that result by

reducing the $150,000 debt to $60,000. However, the bank believed that it would not have to credit the debt for the full $90,000, since it was entitled to receive the $20,000 in cabin proceeds. The debtor proffered the testimony of the attorney who represented her the day of the hearing, and he stated that there was no agreement to credit the net proceeds of the cabin against the bank's bid for the commercial properties, and counsel for the bank accepted the attorney's proffer. The debtor takes the position that the balance of the debt is $38,368.49, and it tendered that amount to the bank at some point, presumably within the 90-day period specified in the agreed order.

## II.

The bank's motion seeks to set aside the sale of the Bradley County commercial properties because it contends there was a misunderstanding between the parties on how the bank would formulate its credit bid. Although it obtained the properties for a $90,000 credit bid, the bank asserts that, if the agreed order had properly reflected the "side agreement" regarding the credit of the cabin proceeds, the bank would only have had to "pay" (by a credit to the indebtedness) $70,368.49 for the commercial properties. The bank acknowledges that there was no "meeting of the minds" in that regard, but contends that it should not have to credit the debtor for the full $90,000 because it bid that amount on the mistaken assumption that there was an agreement. Hence, the bank seeks an order vacating the auction sale of the Bradley County commercial properties.

"The law is clear that a confirmed sale is not to be set aside except under the limited circumstances where fraud, mistake or a similar infirmity is present." *In re Furst*, 57 B.R. 1013, 1015 (E.D. Pa.), *appeal dism'd*, 800 F.2d 1133 (3rd Cir. 1986). "The public policy against set-

ting aside the sale of property in a case such as this is strong. 'If parties are to be encouraged to bid at judicial sales, there must be stability in such sales and a time must come when a fair bid is accepted and the proceedings are ended.' 'The policy of finality protects confirmed sales unless "compelling equities" outweigh the interests of finality." *Citicorp Homeowners Servs., Inc. v. Eliot (In re Elliot)*, 94 B.R. 343, 346 (E.D. Pa. 1988) (quoting *In re Webcor, Inc.*, 392 F.2d 893, 899 (7th Cir. 1968); *In re Chung King, Inc.*, 753 F.2d 547, 550 (7th Cir. 1985)). As one bankruptcy court has explained:

> In determining if the confirmed sale should be set aside, certain fundamental principles must be recognized. The standard for setting aside a sale is stricter than the standard for rejecting a proposed sale. In the latter situation, the governing principle is to obtain the best price for the bankruptcy estate whereas in the former there is a greater emphasis upon the need for finality in judicial sales and executed contracts. They should not be upset unless tinged with fraud, error or similar defects which would in equity affect the validity of any private transactions.

*In re University Ave. Props.*, 55 B.R. 986, 989 (Bankr. E.D. Wis. 1986).

In this case, there are no "compelling equities" such as would outweigh the strong public policy in favor of finality. There is no allegation of fraud, collusion, or defects in the conduct of the sale. The agreed order clearly provides for the application to the debt of *all* of the net sale proceeds – the proceeds of the cabin and of the commercial properties – and it clearly contemplates that the bank may credit bid, but it does *not* provide that the bank would not be required to credit the debt for the full amount of its credit bid. "A credit bid allows a secured lender to bid the debt owed it in lieu of other currency at a sale of its collateral." *Citizens Bank v. Official Comm. of Unsecured Creditors (In re Philadelphia Newspapers, LLC)*, 599 F.3d 298, 320 (3d Cir. 2010). When a secured creditor credit bids, if it purchases the property, it may "offset such claim against the purchase price of such property." 11 U.S.C. § 363(k); *see In re Philadelphia*

*Newspapers, LLC*, 418 B.R. 548 (E.D. Pa. 2009), *aff'd*, 599 F.3d 298 ("[I]f the secured creditor is the winning bid no exchange of currency occurs and the amount of the bid is offset against the amount of the outstanding debt."). If the bank understood that the parties had agreed to a modification of the usual rules of credit bidding, it was incumbent on the creditor to memorialize such an irregular agreement in the agreed order that its attorney drafted and that the bank officer himself read but never questioned. The evidence presented at the hearing did not establish that a "side agreement" had been reached between the parties concerning how the bank would formulate its credit bid, and there is no ambiguity in the agreed order regarding the terms of the auction sale.

The bank was entitled to and did receive the net proceeds of the sale of the cabin ($19,631.51) and must credit the debt in that amount. The bank must also credit the debt for the amount it credit bid for the commercial properties ($90,000.00). Thus, the balance that the debtor is obligated to pay to obtain the release of the bank's security interest in the beauty shop property is the balance owed on the bank's claim after the foregoing credits are made.

### III.

For the foregoing reasons, the court will enter an order denying the bank's motion and granting the debtor's motion by determining that the balance owed to the bank is the balance remaining unpaid after applying the proceeds of sales of the three tracts or parcels of real property.

# # #